**IN UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CHINISHA L. ROBINSON, individually** | ) | |
| **and as parent and legal guardian of** | ) | |
| **JAZMIN ROBINSON, a minor,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 07-cv-02543** |
| | ) | **Judge S. Thomas Anderson** |
| **v.** | ) | **Magistrate Judge Gerald B. Cohn** |
| | ) | |
| **THE ROOTO CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Rooto Corporation ("Rooto"), in this Reply in Support of its March 18, 2009 Motion for Summary Judgment, takes this opportunity to reply to certain points asserted in Plaintiff's response to the motion.

**Lack of Prior Incidents**

It is undisputed that, other than the injuries alleged here, there are *no* reports of injuries from the product at issue (of which 1.9 million containers, containing more than 40 million applications, have been sold since 2005). (Pl.'s Resp. to Rooto's Stat. of Undisputed Facts, ¶ 3.)

Rooto's *prior* version of granular sodium hydroxide household drain opener (which had a different formulation from that of the product at issue), discussed in Paragraph 4 of the Statement of Undisputed Facts, was sold for more than thirty years without any reports of injuries. In her Response, Plaintiff attempts to dispute Paragraph 4, citing two sources. Neither source, however, is relevant, and neither creates a genuine dispute as to that fact.

1

Plaintiff first cites the deposition testimony of Dr. Moon regarding a lawsuit in 1970 or 1971.  (Pl.'s Resp. to Statement of Undisputed Facts ("SUF") ¶ 4.)  Not only is that lawsuit more than thirty years old, but, as Dr. Moon's cited deposition testimony makes clear, that lawsuit also involved a different product from the one at issue here -- a sewer cleaner/root destroyer, *not* a household drain opener.  (Docket Entry 36-3, Dep. of Dr. Moon at p. 27.)  The product differed from Rooto's prior household drain opener in that it was packaged differently, carried different warnings and instructions, and was used for different purposes and in different contexts.  Furthermore, its formulation of course differed from that of the drain opener at issue in this case.  (It should also be noted that Rooto obtained a verdict in its favor in the 1970 or 1971 root destroyer case.)[1]

Plaintiff's citation of *Beyrle v. Finneron*, 229 A.D.2d 1010, 645 N.Y.S.2d 192 (1996) (affirming grant of summary judgment in favor of Rooto on FHSA grounds), is equally unavailing.  That lawsuit involved a product that differs substantially from both the drain opener involved here and Rooto's earlier version of a sodium hydroxide drain opener.  The product at issue in *Beyrle* was liquid, not granular.  *Id.* at 1010, 1011 (noting that the drain opener had been "splashed" about a bathroom).

In short, the safe track record of both the product at issue and Rooto's earlier sodium hydroxide drain opener, as discussed in Paragraph 4 of the SUF, remains undisputed.

### "Prudent Manufacturer" Claim

Plaintiff's only pending claim is a state law claim arising under the Tennessee Products Liability Act ("TPLA").  That statute allows for plaintiffs to bring claims of "unreasonable dangerousness" under two avenues – the "consumer expectation" test and the "prudent

---

[1] We shall be filing at the first opportunity a declaration by Dr. Moon that establishes the facts set forth in the text concerning the 1970 or 1971 lawsuit.

manufacturer" test.   In her Complaint, Plaintiff specified and opted for the "consumer expectation" test.  (Compl. ¶ 30.)

The Complaint makes no mention of the "prudent manufacturer" test, and Plaintiff has never sought to amend the Complaint.  Nor did she ever notify Rooto by any formal or informal means that she intended to pursue a claim under the "prudent manufacturer" test – until April 24, 2009, when she filed her response to Rooto's summary judgment motion.  With the discovery deadline having long since passed, and less than seven weeks remaining before the trial date, that notice is untimely.  The "prudent manufacturer" test was not pled, and it is therefore not properly a part of Plaintiff's claim.  If Plaintiff's April 24th response is construed as a motion to amend her complaint, that motion should be denied, because no reason has been given for the delay and Rooto would be prejudiced by the last-minute addition of a new claim.

Should the Court permit Plaintiff to assert a "prudent manufacturer" claim, the Court nonetheless must, for two reasons, grant Rooto summary judgment.  First, for the reasons stated in Rooto's *Daubert* motion and its memorandum (Docket Entry 30, Mot. to Exclude), Plaintiff is unable to present admissible expert testimony to support her claim.   As Planitiff herself acknowledges, the failure to present such testimony is fatal to her "prudent manufacturer" claim. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Docket Entry 36-2, at p. 3 (stating that "the 'prudent manufacturer' test does require expert proof."); *Ray by Holman v. BIC Corp.*, 925 S.W.2d 527, 531 (Tenn. 1996) (holding that "expert testimony about the prudence of the decision to market [is] essential").  Second, even if the proffered testimony of her expert, Meyer Rosen, were to survive Rooto's *Daubert* challenge, Planitff would still lack sufficient proof to create a jury-submissible claim on her "prudent manufacturer" claim.

Turning first to the inadmissibility of Rosen's testimony, we simply note that the

memorandum filed in support of Rooto's *Daubert* motion (Docket Entry 30-1) specifically

discusses, at pages 9-19, the lack of reliability of Rosen's unsupported testimony that the product

should be removed from the market.  Rooto's subsequently-filed reply brief (Docket Entry 39)

also discusses the substantial deficiencies in Rosen's analysis, including his lack of knowledge

about the drain opener industry, what type of products are on the market, how much of each is

sold each year, how many injuries have occurred, the nature and cause of such injuries, the

various CPSC actions and regulations related to drain openers, and the safe track record of

Rooto's product.  (It is also noteworthy that the claims in Rosen's written report about the track

record of Rooto's product were unsupported and demonstrably false.  Docket Entry 36-3, Pl.'s

Resp. to SUF ¶ 18.)   Because Rosen's testimony relating to the drain opener market is not

sufficiently reliable to satisfy Federal Rule of Evidence 702, as set forth more fully in Rooto's

*Daubert* filings, it cannot be considered on summary judgment and cannot be used by Plaintiff to

create a genuine issue of material fact.  *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483,

495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot

use…inadmissible evidence to create a genuine issue of material fact.")

        Assuming for the sake of argument that Rosen's testimony is admissible, it still would

not permit Plaintiff to submit her "prudent manufacturer" claim to the jury.  As we pointed out in

Rooto's summary judgment brief, it is the rare product indeed that is eligible for a jury finding

that it should be withdrawn from the market.  "[I]t is only at their most extreme that design

defect cases reflect the position that a product is simply so dangerous that it should not have been

made available at all." Prosser and Keeton, *The Law of Torts* (5th ed.) ¶ 96, pp. 688-89.   A

reasonable jury could not find that the drain opener at issue here – given its long, safe track

record; its warnings that indisputably comply with the Federal Hazardous Substances Act (*see*

discussion *infra*); and the CPSC's refusal to remove other, more dangerous drain openers from

the market – is one of those extremely rare products that should be withdrawn from the market.

### Plaintiff's Claim that Rooto's Warnings Were Inadequate

Plaintiff's Complaint alleged two federal "failure to warn"/inadequate warning claims.

(Compl. ¶¶ 26, 28.)  Even long after the May 6, 2008 dismissal of her federal claims (Docket

Entry 11), however, Plaintiff continues to press a claim that the warnings were inadequate.[2]

Presumably, then, Plaintiff asserts that the product is "unreasonably dangerous" under the TPLA

for insufficient warnings.  That is, Plaintiff's TPLA claim (her only pending claim) presumably

includes a claim that the warnings are inadequate.  Because Rooto complied with the FHSA,

however, Rooto is entitled to summary judgment on any TPLA claim based on alleged

insufficiency of the product's warnings.

As set forth in pages 5-6 of Rooto's opening summary judgment memorandum (Docket

Entry 26-2), courts have unanimously held that the express preemption provision of the Federal

Hazardous Substances Act ("FHSA") preempts any state law claim in which a plaintiff alleges

that a product should carry warnings beyond those required by the FHSA.  *E.g., Milanese v.*

*Rust-Oleum Corp.*, 244 F.3d 104, 109 (2d Cir. 2001) ("the FHSA preempts any state cause of

action that seeks to impose a labeling requirement different from the requirements found in the

FHSA and the regulations promulgated thereunder").

Plaintiff's TPLA inadequate-warning claim thus must stand or fall on whether Rooto's

warning complies with the FHSA.  As we acknowledged in our opening summary judgment

memorandum (Rooto's Mem. in Supp. of Summ. J. at pp. 6-8), the FHSA does not prohibit a

plaintiff from asserting a state law claim premised on the failure of a product's warning to

---

[2] For example, in her April 24, 2009 filing, Plaintiff continues to assert that the warnings are inadequate.  (Pl.'s Resp. to Rooto's Mot. for Summ. J. at pp. 4-5 and 8, referencing "inadequate warnings.")

comply with the FHSA.  *Milanese*, 244 F.3d at 109.  The problem faced by Plaintiff here, though, is that this claim presents a question of law, *Pennsylvania General Ins. Co. v. Landis*, 96 F. Supp. 2d 408, 412 (D.N.J. 2000) ("whether…the label complies with the requirements of the [FHSA] is a question of law") (citation omitted), and the record in this case establishes that Rooto's warning complies with the FHSA as a matter of law.  Rooto has established that its product is subject to the FHSA and that its warnings are FHSA-compliant.  Neither Plaintiff's discovery responses nor her expert has offered any evidence to the contrary.  For that matter, in her summary judgment response, Plaintiff has offered nothing to dispute the fact of Rooto's FHSA compliance.  (Pl.'s Resp. to SUF ¶¶ 7-11.)  Although in her Response Plaintiff continues to argue that Rooto's label was inadequate, she fails to identify – and, indeed, she cannot identify – a single FHSA provision or regulation that Rooto's warning violates.

To the extent that Plaintiff is asserting TPLA claims based on alleged deficiencies in Rooto's warnings, those claims therefore must be rejected as a matter of law.

### Effect of Adequate Warning on Plaintiff's "Consumer Expectation" Claim

The established compliance of Rooto's warnings with the FHSA (as discussed *supra* in the immediately preceding section) is determinative of Plaintiff's "consumer expectation" claim. Because Rooto has complied with the federal statutes and regulations that govern its warnings, and because those warnings are designed to provide reasonable consumers with the information they need in order both to appreciate the product's dangerous characteristics and to take the specific precautions necessary to avoid those dangers, application of the following rules prevents Plaintiff from asking a jury to find that Rooto's drain opener possesses dangerous characteristics beyond those contemplated by the ordinary consumer:

(1) "Where warning is given, the seller may reasonably assume that it will be read and

heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in

defective condition, nor is it unreasonably dangerous."  Restatement (Second) of Torts § 402A,

comment j (cited by both the Tennessee Supreme Court and the Tennessee Court of Appeals, as

set forth in Rooto's Mem. in Supp. of Summ. J. at p. 9, n.4.)

(2)  Consumers cannot reasonably expect a product to perform more safely than its

federally-mandated warnings indicate.  (*See* cases cited at Rooto's Mem. in Supp. of Summ. J. at

p. 10:  *Papike v. Tambrands Inc.*, 107 F.3d 737, 743 (9th Cir. 1997) (where product's warnings

met the federal requirements, a plaintiff's "consumer expectation" claim fails as a matter of law,

because "[t]o rule otherwise would allow the anomalous circumstance that a consumer is entitled

to expect a product to perform more safely than its government-mandated warnings indicate.");

*Murphy v. Playtex Family Products Corp.*, 69 Fed. Appx. 140, 144, 2003 WL 21470312, at *4

(4th Cir. June 26, 2003) (applying Maryland's "consumer expectation" test, which is identical to

Tennessee's, and affirming judgment as a matter of law that the product was "not dangerous to

an extent beyond that which would be contemplated by the ordinary consumer because Playtex

fully complied with federal labeling requirements").

(3)  Tennessee law imposes a "fairly stiff standard" under which a product's compliance

with federal regulations related to "labeling, warning or instructions for use of a product" raises a

rebuttable presumption against unreasonable dangerousness.  *Goins v. Clorox Co.*, 926 F.2d 559,

561-62 (6th Cir. 1991) (citing Tenn. Code Ann. § 29-28-104).

(4)  If a plaintiff could have avoided injury by heeding a product's warnings, the

essential element of causation is lacking, and the claim fails.  (*See* cases cited at Rooto's Mem. in

Supp. of Summ. J. at p. 12.)

Plaintiff's reliance on *Sigler v. American Honda Co.*, 532 F.3d 469 (6th Cir. 2008), and

*Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800 (Tenn. 2001), for the proposition that a "consumer

expectation" claim typically presents a jury question, is inapposite to the particular claim that she

is making here.  Neither *Sigler* nor *Jackson* involved a product whose warning was indisputably

compliant with a law governing its contents.  The precise purpose of the FHSA provisions and

regulations applicable here was to provide consumers with the information they need in order

both to appreciate the product's dangerous characteristics and to take the specific precautions

necessary to avoid those dangers.  And, as we have explained in the immediately preceding

section, it is beyond genuine dispute that Rooto has in fact complied with the applicable FHSA

statute and regulations.  Consequently, a reasonable jury could not possibly find that Rooto's

product, when considered in combination with the warning on its label (which the jury must

consider), possessed dangerous characteristics not contemplated by the ordinary consumer.  A

contrary conclusion "would allow the anomalous circumstance that a [jury could find that a]

consumer is entitled to expect a product to perform more safely than its government-mandated

warnings indicate."  *Papike*, 107 F.3d at 743.

### Causation/"Using"

Plaintiff, in an apparent effort to excuse her failure to comply with Rooto's warning,

asserts that she was "not 'using' the Defendant's product at the time it injured them."  (Resp. at

3.)  She argues:

> Even assuming, for purposes of argument, that the Plaintiff should have dressed
> herself in a 'haz-mat' suit from head to toe, completely covering not only her eyes
> but also her face and neck, and likewise required every present member of her
> family to do the same, Defendant would still be prohibited for purposes of
> summary judgment to make the factual assumption that all such protective garb
> would not have been reasonably removed after the product had been poured –
> which, in the present case, would only once again expose the unwitting family to
> these same lingering dangers….[Defendant's labels] warrant no reasonable
> expectation that such dangers should linger indefinitely.

(Pl.'s Resp. at pp. 4-5.)

Plaintiff's deposition testimony, however, establishes that, when she placed the product in the sink, it began to fizz "maybe five or six seconds, maybe ten, ten seconds" later. (Docket Entry 34-1, Dep. of Plaintiff at 108-09.) Both Plaintiff and her daughter heard and commented on the fizzing noise, both making statements like, "it seems like it's working" (*id.* at 106, 114) while they stood, listened and "just watch[ed]" for "not even a minute" (*id.* at 107, 110, 114). The fizzing lasted less than a minute, then the alleged expulsion occurred. (*Id.* at 114.) Plaintiff testified that "maybe two minutes" total elapsed between her placing the product in the sink and the alleged expulsion (*id.* at 107) – a brief time period during which both she and her daughter heard the fizzing noise and agreed out loud with one another that the product was working.

A reasonable consumer could not say with a straight face (and a reasonable jury could not find) that she was not "using" the product in that scenario. Nor could a reasonable person claim to believe that Rooto's warnings (such as "**DANGER**," "**Misuse may result in splash back, severe burns, blindness, or other serious injury**") and instructions (such "**Keep out of reach of children**" and "**ALWAYS wear rubber gloves, goggles, and protective clothing when using this product"**) meant simply that she should don "goggles, rubber gloves, and protective gear" only when spooning out the product and that it was perfectly safe to remove them less than two minutes later and stand unprotected, watching, with a minor child, while the product was still audibly, obviously working. (Plaintiff here, of course, never used goggles at all; this is meant only to respond to the argument she makes in her Response.[3])

---

[3] Plaintiff says that "goggles in this case would not have avoided or even mitigated her injuries." (Pl.'s Resp. at 4.) Because she cites no evidence in support of that statement (which contradicts common sense), it can be disregarded for the purposes of summary judgment. In any event, in cases involving splash back of other chemicals, courts have held that the failure to use protective measures caused the injuries. *See Sabbatino v. Rosin & Sons Hardware &*

The "consumer expectation" test requires only that the product be as safe as a *reasonable* consumer would understand it to be – not that it be made safe for all people, under all circumstances, regardless of whether they choose to follow the instructions or heed the warnings or interpret them in a reasonable way.  Virtually every product (knives, lighters, bleach, cars) can be dangerous when misused, and most can be made reasonably safe for consumer use, if adequate warnings are given.  Users of products are responsible for complying with warnings, and their failure to do so does not render manufacturers liable for their poor decisions.  *Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1426 (E.D. Tenn. 1991) (granting summary judgment on causation grounds for the defendant where, if the plaintiff "had heeded and complied with the defendants' warning," the injury would not have occurred); *Hornyak v. National Presto Industries*, 1995 WL 239104, at *4 (N.D. Ill. Apr. 21, 1995) (a plaintiff who "chose to completely disregard both [the product's] instructions and his own common sense," had "proceeded at his own risk" and was not entitled to recover from the product's manufacturer when he was injured); *Sabbatino v. Rosin & Sons Hardware & Paint, Inc.*,  253 A.D.2d 417, 420 (N.Y.A.D. 2 Dept. 1998) (granting summary judgment to defendant on causation grounds where plaintiff failed to follow directions to place an inverted dishpan over the drain after adding sulfuric acid drain opener and, "had [the plaintiff] followed the label instructions there would have been no injuries").  Unsurprisingly, Plaintiff is unable to cite any authority in support of her

---

*Paint, Inc.*, 253 A.D.2d 417, 420 (N.Y.A.D. 2 Dept. 1998).  Plaintiff also attempts to rescue her "consumer expectations" claim by stating that the warnings do not "advise against innocently entering a room where the product was previously used and the container has since been sealed and stored." (Pl.'s Resp. at pp. 4-5.)  This, obviously, refers to Jazmin Robinson's injuries.  Again, however, the argument fails –  because the warning label makes clear, in multiple places, that the product is *not* to be used around children, such that a reasonable consumer would not have allowed a minor to stand unprotected over the fizzing drain seconds after adding the product.  Also, it is important to note that "the consumer contemplation test is applied from the perspective of the ordinary consumer of the product, not of every foreseeable user.  This means that even though children may be foreseeable users of a product, their expectations are not relevant because they are not 'ordinary consumers.'" *Miles v. S.C. Johnson & Son, Inc.*, 2002 WL 1303131, 4 (N.D. Ill. June 12, 2002).

argument that she was not "using" the product as she looked over the sink and listened to the fizzing noise, seconds after adding the product to the sink.[4]

### Conclusion

The mere fact that injuries occurred – even serious injuries[5] – does not, of course, create a jury question. *King v. Danek Medical, Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000). In order to recover under the TPLA, a plaintiff must, in response to a motion for summary judgment, come forward with evidence that would permit a jury to find the subject product unreasonably dangerous under a cognizable legal theory. Plaintiff in this case has failed to carry this burden. For the reasons stated herein, Rooto respectfully submits that its motion must be granted and that it is entitled to summary judgment on Plaintiff's TPLA claims.

---

[4] The warnings on Rooto's product also would have made it clear to a reasonable consumer that the product should *not* be used after multiple attempts by plumbers to clear a drain have failed.

[5] The severity of the injuries is not relevant to the legal issues presented here. However, to clarify Plaintiff's statement that she and her daughter were "permanently blind[ed]," it should be noted that Plaintiff can see well enough to maintain a driver's license and drive frequently, and that her daughter expects to be able to obtain her driver's license when she reaches the appropriate age. (Ex. A, Suppl. Dep. of Plaintiff at p. 16; Ex. B, Suppl. Dep. of Jazmin Robinson at pp. 8-9.)

Respectfully submitted,

s/ Mary Hale Morris
**BURCH, PORTER & JOHNSON, PLLC**
J. Brook Lathram (No. 4804)
DeWitt M. Shy, Jr. (No. 5163)
Mary Hale Morris (No. 21878)
130 North Court Avenue
Memphis, Tennessee  38103
Ph.:     (901) 524-5000
Fax:     (901) 524-5024
blathram@bpjlaw.com
dshy@bpjlaw.com
mmorris@bpjlaw.com

*Attorneys for Rooto Corporation*


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been sent to David McLaughlin, Attorney for Plaintiffs, dmclaughlin@cochranfirm.com, The Cochran Firm, One Commerce Square, 26th Floor, Suite 2600, Memphis, TN 38103, via the Court's electronic filing system, this 11th day of May, 2009.

s/ Mary Hale Morris